J. Robert Lynch, J.
The relator seeks his release by habeas corpus from the custody of the Marcy Psychiatric Center to which he voluntarily committed himself as a condition of probation. Section 65.10 (subd 2, par [d]) of the Penal Law permits as a condition of probation that a defendant may be *45 required to "[u]ndergo available medical or psychiatric treatment and remain in a specified institution, when required for that purpose”. This application poses the question whether the form of the confinement under such a condition, and consequently the duration of confinement, can be permitted even though in contravention of the hospitalization procedures set forth in the Mental Hygiene Law. Put differently, does the phrase "when required for that purpose” mean when required by the sentencing Judge for the purpose of the sentence or when required by the needs of the patient for further treatment?
The relator has been in custody of one type or another since May, 1972 when he was indicted by the Herkimer County Grand Jury for burglary in the second degree and attempted rape in the first degree. He pleaded guilty to attempted rape in satisfaction of both counts and was sentenced to an indeterminate term with a maximum of 10 years by the Herkimer County Judge. Upon appeal his plea was vacated and the matter remitted to County Court for a hearing to ascertain his mental capacity to understand the charges and to participate in his own defense (People v Candella, 49 AD2d 800). The hearing was held and, although the relator was found to have sufficient capacity to understand the charges and participate in his defense, the sentencing court determined that he "in fact needed or should have treatment of some sort; that inpatient treatment was recommended if in fact the defendant was willing to accept it”.
Again the defendant pleaded, and prior to sentencing, presented the County Judge his signed affidavit stating, in part:
"5. I am willing to accept such in-patient treatment and will, upon release from incarceration in the Herkimer County Jail, voluntarily commit myself to said institution [Marcy Psychiatric Center].
"6. I further voluntarily waive for the period of five years any right I might have under Sec. 31.13.25 of the Mental Hygiene Law to petition for my release unless I first make application to County Court and include the statement of at least one psychiatrist that I am no longer in need of in-patient treatment.
"7. My rights have been fully explained to me by counsel, and I make this statement knowingly, voluntarily and of my own free will”.
Thereupon the court sentenced the relator to probation for *46 five years and made a specific condition that he voluntarily commit himself as an inpatient at Marcy Psychiatric Center and "shall voluntarily remain there until application is made to the Herkimer County Court for release as provided in paragraph '6’ of the instrument this day signed by said Joseph Philip Candella”. On March 2, 1976, the relator was granted voluntary admission to Marcy, the admitting physician noting that it was "medically necessary for treatment which could reasonably be expected to improve the patient’s condition”.
Section 31.21 of the Mental Hygiene Law encourages voluntary admission status over that of the involuntary commitment, but primarily it lies within the discretion of a hospital director whether he will accept one applying for voluntary admission (Mental Hygiene Law, § 31.13, subd [a]; § 31.17, subd [b]). Once a patient has been accepted for voluntary admission, he can be released whenever he desires, except that if the hospital feels that he is in need of further treatment, it has 72 hours within which to seek a court order converting him to involuntary status (Mental Hygiene Law, § 31.13, subd [b]).
On June 11, 1976 a doctor from Marcy informed the Herkimer County Judge that the relator had requested his release under subdivision (b) of section 31.13 and sought the opinion of the court whether it could honor this request under the terms of the sentence. From the opinion letter of the Judge to the doctor, it is apparent that the hospital had not conveyed any intention to seek to convert the relator’s status to that of an involuntary patient. The Herkimer County District Attorney has also acknowledged this by his affidavit stating that it is clear that the hospital "is most anxious to rid itself of the Relator”. Nonetheless, it was the County Judge’s opinion that the relator had waived all his rights and could only be released according to the terms of probation, i.e., by application to the County Court, with a letter from a psychiatrist stating no further treatment was needed.
On July 28, 1976, the Mental Health Information Service, having an official concern with the admission and retention status of all patients (Mental Hygiene Law, § 29.09) wrote the County Judge asking that he reconsider and nullify the hospitalization conditions of probation. It conveyed to the Judge its belief that the relator could not legally waive the rights granted by the Mental Hygiene Law and, in addition, he could not "waive the right and obligation of the Mental Health *47 Information Service to test his status under § 31.25.” (Actually, this latter complaint was premature, because the rights of the Information Service would not accrue under this section until the patient had been in voluntary status for one year.)
In his reply, the County Judge ignored the latter complaint and opined that relator could and did waive his rights and that he could be restricted to obtaining his release by the method set forth in his conditions of probation.
Under its obligation the Mental Health Information Service then conveyed its concern to the Supreme Court, Justice Hancock in a memorandum entitled "Request and Recommendation for Writ of Habeas Corpus”. Justice Hancock appointed the relator’s present attorney to pursue the matter and this application was born.
The moving papers allege an illegal confinement in that: the relator is imprisoned in a room in the hospital without normal patient privileges; that he is not undergoing treatment; that he cannot waive the due process and equal protection rights of the Federal and State Constitutions or the procedures of the Mental Hygiene Law; that his sentence did not give him credit for time served.
We dispose summarily of this last objection. While credit for time served may play a part in the calculation of a term of imprisonment (Penal Law, § 70.30) or a release on parole (Penal Law, § 70.40), it plays no part in the statutory calculation of a period of probation since that sentence is deemed to have commenced on the day that it is imposed (Penal Law, § 65.15).
Upon the record before him the County Judge was justified in resorting to the Penal Law (§ 65.10, subd 2, par [d]) to require inpatient treatment at Marcy as a condition of probation. The necessity for treatment was substantiated by the finding of the Marcy admissions officer. (One is curious as to what effect would have been given a contrary finding; the sentence does not cover that eventuality.) The favoring of voluntary admissions justifies the sentencing Judge’s requirement of a voluntary admission. We pass over whether a required admission is truly voluntary because the relator here agreed to seek such admission as part of a plea bargain.
Such authority as the County Judge had to impose the condition must be found in the statute which under any logical reading limits the probationer’s stay in the institution to whatever time is required for his psychiatric treatment. To *48 read it to require confinement for a length of time unrelated to the necessity of treatment would be to make jails of our mental institutions.
Under the terms of probation here, two conditions for release had to be met: a letter from a psychiatrist attesting to the need of no further treatment; the permission of the County Judge. Since a letter from any psychiatrist would presumably suffice, this prerequisite could be met despite a reasonable belief by the hospital’s psychiatrists that the patient was in need of further treatment. Thus release could be effected contrary to subdivision (b) of section 31.13 of the Mental Hygiene Law. Furthermore, placing upon the patient the burden of obtaining such a letter shifts the burden which the Mental Hygiene Law always places upon the hospital, of proving the necessity for further treatment.
Since the condition for release requires the permission of the County Judge as well as the letter from the psychiatrist, presumably such permission could be withheld even if no medical authority felt a need for further treatment. Not only does this make a jail of the hospital but it usurps the jurisdiction specifically limited to the Supreme Court, and the County Court of the county where the hospital is located, to control the duration of a patient’s hospitalization (Mental Hygiene Law, § 31.13, subd [b]).
In the abstract, we could construe this condition of probation as not being preclusive of the rights granted the hospital and the Mental Health Information Service under the Mental Hygiene Law, even if the patient could waive his rights. If we did that neither the hospital nor the Information Service would be required to seek the patient’s release through the Herkimer County Court, but could rely on their usual procedures. However, the practicality of the matter is that the County Judge in his opinion letters, relying upon the patient’s waiver, has presumed to foreclose the others from asserting their rights.
We do not comprehend, nor have we been shown, how a patient’s waiver of his rights under the Mental Hygiene Law could bind or nullify the independent obligations of either the hospital or the Mental Health Information Service. But since the County Judge is construing his sentence to do just that, we must hold the sentence illegal and invalid.
The complaints of the hospital and the Information Service *49 of the limitations to their authority imposed by this sentence come to us indirectly through the inclusion in the papers of the County Judge’s correspondence with them. The relator himself makes a direct attack on the basis of the opinion letters, and upon the undergirding of the plea bargain, that he cannot waive his constitutional rights or the benefits of the Mental Hygiene Law.
"A party may waive a rule of law or a statute, or even a constitutional provision enacted for his benefit or protection, where it is exclusively a matter of private right, and where no considerations of public policy or morals are involved. But a statutory right conferred upon a private party but affecting the public interest may not be waived or released if such waiver or release contravenes the statutory policy.” (21 NY Jur, Waiver, § 91, omitting citations.) A voluntary patient has the right to leave the hospital whenever he gives written notice. He has the right to have his hospitalization terminated unless he renews his consent each 120 days. His hospitalization cannot be continued beyond 12 months unless he is willing. (Mental Hygiene Law, § 31.13, subd [b], § 31.19, § 31.25, subd [a]). These are the rights the relator undertook to waive.
These are not rights private to the relator. Rather, they are but one facet of an integrated plan for the treatment of mental patients, interwoven inextricably with rights granted others. The reception by the hospital of a patient as a voluntary admission lies within its discretion (Mental Hygiene Law, § 31.13, subd [a]). The hospital has the right to seek to convert a voluntary admission to an involuntary one (Mental Hygiene Law, § 31.13, subd [b]). (The County Judge’s answering affidavit concludes, without evidentiary support, that if the relator is kept locked in a room at the hospital, it may be because he has demonstrated dangerous assaultive tendencies. If this is true, it would seem that the hospital would have indicated a desire to change his status, but rather than this, it seems eager to release him.) Most important, the hospital has the right to discharge a voluntary patient (Mental Hygiene Law, § 31.17, subd [b]) but this right is inhibited by the County Judge’s opinion letter.
The Mental Health Information Service has the right and the duty to "study and review the admission and retention of all patients” (Mental Hygiene Law, § 29.09) and, after one year of a patient’s voluntary admission, it may seek his *50 release independently of his desires or those of the hospital (Mental Hygiene Law § 31.25, subd [a]).
The public, too, (see Mental Hygiene Law, § 1.03) has the right to have its psychiatric hospitals free of patients for whom there is no longer need for retention. To this end it enacted the interrelating statutory powers above cited concerning the release of voluntary patients and it provided for court hearings for involuntary ones (Mental Hygiene Law, § 31.31, subd [c]).
In this context we must hold that the waiver of the benefits granted relator by the Mental Hygiene Law is invalid as contravening the policy of the statute, as being violative of the rights of others, and as contrary to the public interest.
A sentence based on such an invalid waiver is illegal. The relator must be released from the custody of Marcy Psychiatric Center and remanded to the custody of the Sheriff of Herkimer County to be returned before the County Judge for resentencing (People ex rel. O’Berst v Murphy, 256 App Div 58; People v Quartararo, 76 Misc 55).