OPINION OF THE COURT
Bertram Katz, J.
A voluntary patient who seeks his release from a psychiatric hospital under section 9.13 of the Mental Hygiene Law is entitled to such release where the hospital, in the absence of extenuating factors, fails to abide by its statutory duty to move within 72 hours to retain the patient. Because the Bronx Psychiatric Center has wholly failed to comply with its duty of *647 moving expeditiously, and has offered no excuse for this failure, this court has directed that the patient, Scott Gladstone, be released according to law, and that the instant proceedings for involuntary retention of Mr. Gladstone be deemed a nullity, and be dismissed summarily. In view of the multiplicity of cases with similar facts, the court deems it proper that it expand on its short-form order dated April 18, 1989, and set forth its reasons for ordering dismissal of the proceeding.
Scott Gladstone was admitted to Bronx Psychiatric Center (the Center) on July 6, 1988. On August 19, 1988 he was converted to voluntary status.
On March 28, 1989, he gave notice in writing to the director of the Center of his desire to leave the hospital pursuant to section 9.13 (b) of the Mental Hygiene Law. Upon receipt of such a request, that statute mandates that the director of the hospital, within 72 hours of receipt, "apply to the [S]upreme [C]ourt or the [C]ounty [C]ourt in the county where the hospital is located for an order authorizing the involuntary retention of such patient. The application and proceedings in connection therewith shall be in a manner prescribed in this article for a court authorization to retain an involuntary patient, except that notice of such application shall be served forthwith and, if a hearing be demanded, the date for hearing to be fixed by the court shall be at a time not later than three days from the date such notice has been received by the court.”
The examining physician for the Center prepared a "Certificate of Examining Physician”, recommending against Mr. Gladstone’s release, on Wednesday, March 29, 1989. A "Notice of Application for Court Authorization to Retain a Patient” dated Monday, April 3, 1989, was prepared, stating that an application would be made to the court on that date, April 3, 1989. However, the application and supporting papers were not filed with the office of the Clerk of the Supreme Court until Thursday, April 6, 1989, and the hearing scheduled for Wednesday, April 12, 1989.
It is clear that the Center did not even approach compliance with the precise time constraints of section 9.13. At the outset of the retention hearing counsel for Mr. Gladstone moved for immediate dismissal due to this untimeliness.
There is authority for counsel’s position, which the court finds to be compelling and well reasoned. In Matter of Sher *648 man (98 Misc 2d 431), Justice Edward J. Greenfield found that a tardy application to retain a voluntary patient must be treated as a nullity, and that the patient has an unwaivable due process right to his release after the 72-hour period has passed without expeditious action by the hospital.
The Office of the Attorney-General,* appearing on behalf of the Center, has raised two points in opposition: (1) that a weekend intervened between the preparation of the Center’s papers and their filing with the court; and (2) that the Court of Appeals in People ex rel. Thorpe v Von Holden (63 NY2d 546) requires the court to entertain the instant retention proceedings, even if untimely.
The first point, as the court’s prior synopsis of dates indicates, is simply incorrect. Nevertheless, even if true, the intervention of a weekend would hardly be relevant, as the statute clearly and unambiguously directs a hospital to move with expedition; in this case within 72 hours of the notice provided by Mr. Gladstone on Tuesday, March 28, 1989. Instead, nothing was filed with this court until Thursday, April 6, a leisurely proceeding which makes a mockery of the legislative scheme mandating alacritous treatment of release requests by voluntary patients. Moreover, even if it was assumed that Mr. Gladstone was served on April 3, 1989 — an assumption for which there is no support in the record — the instant proceeding is still untimely.
As to the Thorpe case (supra), it lends no support to the Center’s position. Thorpe involved the commitment pursuant to CPL 330.20 of a defendant found not guilty of assault in the second degree by reason of mental disease or defect. The Court of Appeals characterized such persons as " 'an exceptional class of individuals who may properly be treated somewhat differently’ ” from persons subject to civil commitment, since the former group of persons have "demonstrated [their] dangerousness” by the acts of violence by reason of which they have been committed (supra, at 555). As such the proper remedy for the untimeliness of the hearing brought to retain Mr. Thorpe was not the immediate release of Mr. Thorpe, but a conditional order of release setting a short fixed period for a retention hearing to be held.
It is also instructive to compare the provisions governing *649 retention of an involuntary patient with those involved herein. Section 9.33 of the Mental Hygiene Law permits a hospital to retain an involuntary patient for extended periods of time, far in excess of 72 hours, while it prepares its application for retention, or while such application is pending. (See, e.g., People ex rel. Candella v Director of Marcy Psychiatric Center, 88 Misc 2d 44; Matter of Trevett, 128 Misc 2d 45.)
The disparity between the two sections of the Mental Hygiene Law indicates the legislative intent that voluntary and involuntary patients be treated differently, with voluntary patients entitled to expeditious processing of their requests for release. The instant case raises a question in the court’s mind as to whether this distinction is being observed by psychiatric institutions.
Although the court will not go so far as to rule that the 72-hour rule must be inflexibly applied in all cases no matter what the extenuating circumstances may be, violations of these time constraints should be the exception, not the rule.
For all of the foregoing reasons, this proceeding is dismissed and the Center is directed to discharge Mr. Gladstone.

 The Office of the Attorney-General declined an opportunity to submit a memorandum of law, choosing to rely on the points made during oral argument.