OPINION OF THE COURT
Lewis R. Friedman, J.
When it revised the Mental Hygiene Law the Legislature carefully created a class of "voluntary” patients in the psychiatric hospitals of this State. This case presents yet another instance where Bronx Psychiatric Center (the Hospital) has proven irresponsible in its treatment of "voluntary” patients whom the Hospital seeks to convert to involuntary status.
*188 In this case the patient was admitted on a voluntary basis on January 26, 1989; he sought release pursuant to Mentál Hygiene Law § 9.13. The Hospital filed an application for conversion to involuntary status on May 16. Eventually, on June 7, Justice Katz conducted a hearing on the merits. After taking testimony from both sides, Justice Katz directed the release of the patient, but stayed his order for seven days to allow proper community planning for the release. The Hospital did not appeal or seek any other stay. However, on June 14, rather than release the patient, the Hospital filed a two-physician certificate under Mental Hygiene Law § 9.27 seeking to retain the patient as an involuntary patient. The matter came before this court on that basis.
As several Judges of this court have previously held, the Mental Hygiene Law is clear beyond doubt that a voluntary patient must be released after a failure to cpnduct a timely hearing (see, Namor v Lopez, 143 Misc 2d 469; Matter of Gladstone, 143 Misc 2d 646). There is alse nc doubt that the statute requires immediate release after a determination following a hearing.
Mental Hygiene Law § 9.13 (b) provides that the procedure for conversion to involuntary status "shall be in the manner prescribed in this article for a court authorization to retain an involuntary patient”. Section 9.33, governing involuntary retentions, refers for its procedures to section 9.31. "The provisions of such section shall apply to the procedure for obtaining and holding a hearing and to the granting or refusal to grant an order of retention by the court”. (Mental Hygiene Law § 9.33 [c].) Section 9.31 (c) then provides "[i]f it be determined that the patient is not mentally ill or in need of retention, the court shall order the release of the patient.” The effect of a release order is unequivocal. "If the court shall order the release of the patient, such patient shall forthwith be released” (Mental Hygiene Law § 9.31 [d]).
There is no doubt that Justice Katz’s order required the immediate release of the patient on June 14. The Hospital could have sought relief from that order by appeal or rehearing before Justice Katz. It utilized none of those remedies. Rather, in violation of the order, it retained the patient on the novel theory that a new two-physician certificate permitted commencement of a new involuntary retention proceeding, subject to still further hearings. That is, the Hospital contended that a release order of a Justice of this court may be ignored when two doctors disagreed with the court’s factual *189 findings. That is not the law. The Hospital’s blatant disregard for the law and the court borders on contempt of proper process and denies the due process rights of the patient.
In Namor v Lopez (supra), this court criticized the practice of Bronx Psychiatric Center’s planned avoidance of the clear meaning of the release provisions in section 9.13. A similar result was reached in Matter of Gladstone (supra). Indeed, this court was compelled to sustain a writ of habeas corpus when the Hospital refused to release Mr. Gladstone after the dismissal of its conversion petition. The Hospital appealed, invoking the stay provisions of CPLR 5519 (a) (1). In an unreported decision in which the stay was vacated, Justice Bentley Kassal, of the Appellate Division, First Department, stated: "The actions of the Bronx Psychiatric Center in ignoring the directions of the Justices in the past and in failing to follow the statutory procedures are deplorable and should be remedied forthwith.” (Matter of Gladstone, Nos. M-2147, M-2117.)
This case proves that no remedy has been forthcoming. This court has discerned a course of conduct by the Hospital and its counsel for retention of "voluntary” patients in a way that effectively rewrites the statute. The Mental Hygiene Law creates a single method for converting a voluntary patient to an involuntary one. The filing of a new two-physician certificate, with a new extended period of delay before a hearing would be held, was neither intended nor authorized by the Legislature (Matter of Gladstone, supra). * This State Hospital must operate by the rules set by the Legislature; it may not set itself above the law.
This case is far more egregious than other cases involving the Mental Hygiene Law: the court has directed release after a full evidentiary hearing. The Hospital has disregarded an unequivocal, direct court order. The Hospital may not substitute the opinion of two of its staff psychiatrists for the unambiguous order of a Justice of the Supreme Court of the State of New York.
The patient shall be released forthwith.

 Of course, if there were an actual emergency, the Hospital may well be free to act (Mental Hygiene Law §§ 9.39-9.45). But that is not a factor here. The reports annexed to the "new” application are essentially identical to those underlying the proceeding before Justice Katz. Difficulty in planning for a patient’s return to the community is neither a ground for involuntary hospitalization nor an emergency.