OPINION OF THE COURT
S. Peter Feldstein, J.
An application by the director of Sunmount DDSO (petitioner) for the involuntary retention of Michelle G. (respondent) under article 15 of the Mental Hygiene Law was filed in this court on January 29, 2009. The matter came on to be heard initially on March 25, 2009 and, following a series of adjournments (all upon consent of the parties), was continued on June 23, 2009, and concluded on October 6, 2009, at which time the court determined that petitioner had failed to meet her burden herein. On October 19, 2009, the court issued an order releasing respondent from Sunmount DDSO. Upon the request of counsel for respondent and the consent of petitioner, the provisions of that order were stayed for 30 days “so that the facility [could] provide Respondent with a discharge plan pursuant to Section 29.15 of the Mental Hygiene Law.” The latter stay has since expired, but petitioner, by affirmation dated November 25, 2009, now seeks to extend that stay. The court issued an order to show cause, dated December 1, 2009, upon the said affirmation. It does not appear that a notice of appeal has been filed herein, and the stay now sought is solely for the purpose of effectuating the discharge planning originally referenced in the release order of October 19, 2009. Respondent, although informally agreeing to continue to reside at Sunmount while awaiting such discharge planning, nevertheless opposes the issuance of such an extension of the stay, and has submitted an affirmation of counsel, dated December 15, 2009, to that effect. The court has permitted the submission by petitioner, on request, of a supplemental affidavit, together with correspondence of counsel by way of reply, both dated December 23, 2009. By letter of counsel, dated January 8, 2010, petitioner has clarified that the duration of the stay requested is intended to extend until February 7, 2010. The court thereafter issued an original decision and judgment herein, on January 12, 2010, which contained an error in the fifth sentence of the first paragraph above (incorrectly stating that “Respondent . . . now seeks to extend that stay”). This amended decision and judgment is issued for the exclusive purpose of correcting that error, inasmuch as the extension of the stay was in fact sought by petitioner.
*401 A stay may generally be granted under CPLR 2201 “in a proper case, upon such terms as may be just.” Absent any clear prohibition on its issuance, therefore, the court would appear to have the power — subject to the proper exercise of its discretion — to issue a stay in a Mental Hygiene Law article 15 proceeding. The parties agree on this point. As is clear from the papers herein, however, the considerations to be weighed by the court in determining whether to exercise its discretion, as well as the terms (if any) to be imposed upon such exercise, are the subject of far less agreement. Additionally, both in regard to the determination of such considerations as might be applied in respect to the exercise of its discretion, and the scope of any terms that might be imposed, there appears little in the way of precedential guidance. No cases addressing these issues, with specific relation to dismissed retention applications under Mental Hygiene Law article 15 (or the parallel article 9), have been cited by either party, nor has the court’s research discovered any.
The burden placed upon the applicant in a retention proceeding (here, Sunmount) requires that proof of the need for retention, and each of its elements," be established by evidence of a clear and convincing character. Having found that such burden was not borne by the petitioner upon the hearing of the application herein, the court has necessarily determined that there is no legal basis upon which to hold respondent. In applying for a stay, however, the petitioner in effect is asking that — for a period of weeks (indeed, it has now been months since the release order issued) and against the wishes of respondent — the court continue to direct that she be deprived of her liberty. While respondent might in fact presently wish to stay on at Sunmount and work toward a mutually acceptable discharge plan, an order effecting a stay would — by force of law — remove from her any control or autonomy in the matter. She could not, under force of such order, change her mind and leave the facility, notwithstanding the court having found that there is no legal basis to continue to hold her against her will.
Restraining the liberty of individuals with respect to whom there has been found no lawful basis for the State to continue to hold them is clearly exceptional. Thus, in the context of habeas corpus litigation, it is a long-standing principle that “[t]he operation of a writ of habeas corpus may not be stayed.” (People ex rel. Morris v Meloni, 209 AD2d 1057 [1994] [citations omitted]; see also People ex rel. Sarlay v Pope, 230 App Div 649 [1930]; People *402 ex rel. Sabatino v Jennings, 246 NY 258 [1927].) And while habeas corpus principles — unlike Mental Hygiene Law articles 9 and 15 release powers — are enshrined in both the United States and New York State Constitutions, and thus cannot be said to apply directly to the issue at hand,[1] they are at a minimum informative of the measure of the constraint, and the sorts of considerations, to be weighed by a court which is asked to restrain the liberty of one with respect to whom it has found no basis in law to hold against her will.
Indeed, similar principles have been articulated in the Mental Hygiene Law context, albeit in very different factual circumstances. Thus, where a hospital sought to circumvent the release order of a mentally ill patient under article 9, by way of a new two-physician certificate, the attempt was struck down in the strongest language possible. (Matter of Josephs, 144 Misc 2d 187 [1989].) Furthermore, in Matter of Gladstone (143 Misc 2d 646 [1989]), as cited and explained in Josephs, it appears that following an article 9 release order and a refusal in fact to release by the hospital, a writ of habeas corpus was sustained in favor of the patient. Indeed, when the CPLR 5519 (a) (1) automatic stay provisions were then invoked on appeal of that habeas determination, the automatic stay was struck down by the Appellate Division, First Department (Matter of Gladstone, motion Nos. M-2147, M-2117, quoted in Josephs at 189). It would seem remarkable if it were necessary that a patient whose release had been ordered under the Mental Hygiene Law must then invoke habeas relief to avoid the imposition of a stay of that release, at least in the absence of extraordinary circumstances.
Furthermore, both the structure of articles 9 (and 15) and the cases interpreting them make clear that a hearing court has an extremely limited role to play in the determination of the care, if any, to be provided to an individual subject to the article. The court may decide whether such individual is to be involuntarily retained on an inpatient basis or not, but may not issue substantive direction as to the care and treatment to be provided, or the setting or location of care, or — indeed—any other aspect of the matter than the retention per se.
Under these circumstances, the court finds that any discretion it might have here must be severely constrained by general *403 principles of due process in the context of a restraint on liberty. The burden on petitioner must accordingly be very high, to demonstrate a convincing need to restrain respondent’s liberty for any further period, whatever conditions might be sought. This constraint upon the discretion of the court, even if self-imposed, appears particularly imperative where, as here, there is neither any claim by way of appeal (or otherwise) that the court has ruled incorrectly in ordering the release of respondent, nor any authority for the court to affect directly the substance of the discharge planning mutually sought by the parties.[2]
Petitioner asserts as the basis for her request — that is, as the suggested factors to be weighed by the court in finding that a stay is necessary and appropriate — the severe practical difficulties which appear to limit the ability of Sunmount to find a further placement both suitable (in petitioner’s judgment) and acceptable to respondent. In effect, the argument consists of a suggestion that respondent must be prevented from leaving Sunmount, should she seek to do so, until petitioner has secured a mutually acceptable, and an actually available, placement for her. While the court is fully prepared to credit the great difficulty petitioner faces in finding a suitable placement for respondent, the fact of that difficulty was considered in the (dismissed) underlying proceeding here — in the context of the need for continuing inpatient care and treatment — and cannot now be said to present a circumstance so extraordinary or exceptional as to require of respondent that she be restrained against her will to await a successful plan. The only lawful basis for ordering such involuntary restraint upon her has been heard and rejected, and there appears no new actual emergency such as might necessitate extraordinary action: “Difficulty in planning for a patient’s return to the community is neither a ground for involuntary hospitalization nor an emergency” (Matter of Josephs at 189 n) and cannot suffice in and of itself to justify a restraint upon liberty of the present magnitude.
*404 While accepting, arguendo, the principle that a proper case might exist for the issuance of a stay of an order of release (apart from the context of a pending or impending appeal), the court finds that the instant circumstances do not in fact constitute such a proper case, and therefore declines to exercise such discretion as it might have under CPLR 2201. Accordingly, the application for a further stay must be denied.
Based upon all of the above it is, therefore, the decision of the court and it is hereby adjudged, that the application for a further stay herein is dismissed.

. Indeed, it appears that the automatic stay provisions — now embodied in CPLR 5519 (a) (1) — which were struck down in the habeas context in Sabatino (supra) are from time to time invoked in the Mental Hygiene Law context, upon the State’s appeal of release orders.

. It is the court’s firm belief, in the absence of any authority to the contrary, that the general provisions of CPLR 2201, authorizing the imposition of a stay upon “such terms as might be just,” cannot be seen to override the clear limitations under the Mental Hygiene Law on the court’s power to direct substantive action in respect to care and treatment in any but the most extraordinary circumstances. Furthermore, the ordered release of respondent, even if stayed, would, in and of itself, imply a near-total constraint upon the court in directing any action — such as participation, or even acquiescence, in discharge planning — on the part of respondent herself.